IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ELIZABETH V. FORTSON, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:19-CV-294 |
| GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Non-party CCC Intelligent Solutions, Inc. seeks to seal exhibits filed by the parties in connection with summary judgment and class certification motions, along with references to those materials in the briefing. The defendant Garrison Property and Casualty Insurance Company also seeks to seal a few exhibits.

The motions will be denied as to summary judgment exhibits where the public's First Amendment right of access outweighs the private interests of CCC or Garrison and to the extent CCC and Garrison have made overbroad sealing requests, seek to seal nonconfidential materials, have waived an interest in confidentiality, or have not shown specific harm from disclosure. The motions will be granted to the extent the summary judgment exhibits are confidential and disclosure would harm CCC's interests or if the materials are not needed to evaluate the basis for the summary judgment decision.

Garrison and CCC shall file a publicly-available supplement to the joint appendix to include all documents, pages, and lines of exhibits where their motions to seal are denied.

## I.    Overview

This case concerned the way Garrison calculated the actual cash value of a totaled vehicle owned by its insured, the plaintiff Elizabeth Fortson, when settling her insurance claim. Ms. Fortson contended Garrison's acts constituted a breach of contract and an unfair and deceptive trade practice. Garrison filed a motion for summary judgment, Doc 78, and Ms. Fortson filed a motion for class certification. Doc 76. The Court granted Garrison's summary judgment motion, *see* Docs. 194, 202, and denied the class certification motion as moot. Doc. 202.

Garrison used the valuation services of CCC to value totaled vehicles; CCC has sought to protect information about its system and data throughout this litigation, contending it is confidential and proprietary business information. *See, e.g.*, Docs. 119–20, 131, 199. Consistent with those efforts, CCC has filed motions seeking to seal information in the briefs and exhibits consisting of, *inter alia*, its methodology for valuing loss vehicles, internal business documents, and macro-analyses of data from non-public market valuation reports. Docs. 119, 131.

Garrison has also filed a motion seeking to maintain a few exhibits under seal. Doc. 115. Garrison asks to seal exhibits containing an internal research report, employee training materials, and deposition testimony from its corporate representative. *Id.*

2

## II.     Procedure

Because motions to seal many of the exhibits and briefing were a virtual certainty, the parties submitted a plan for managing motions to seal, Doc. 73, which the Court approved. Doc. 74. Initially, the litigants filed only their dispositive motions on the public docket, exchanging unredacted briefs and exhibits. *Id.* at ¶ 12. At the conclusion of the briefing process, the parties prepared a joint appendix containing all the exhibits for both motions. The parties filed two versions of this joint appendix: one was a temporarily-sealed version containing all exhibits with proposed redactions highlighted but readable, Docs. 103–13, and the other was a publicly-filed version with redactions or, for those documents Garrison or CCC sought to seal in whole, slip sheets. Docs. 94–102. The parties also filed joint submissions that contained briefing on each motion, again filing redacted public versions, Docs. 92, 125, and sealed versions with proposed redactions highlighted but readable. Docs. 93, 126.

The Court required any party or interested third party seeking to maintain any exhibits or portions of a brief under seal to file a motion and evidence supporting the motion. Doc. 74 at ¶ 14. Garrison and CCC have filed motions to maintain the seal on the unredacted versions, and briefing is complete. Those motions are on the public docket, the public has had notice of the motions to seal for several weeks, and the Court's publicly-filed order provided a way for objections to be filed. *See Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567, 576 (4th Cir. 2004) (noting that before sealing judicial records a district court must give the public notice and a reasonable opportunity

Case 1:19-cv-00294-CCE-JLW   Document 208   Filed 03/18/22   Page 3 of 30

to challenge the request to seal).  No person or entity has filed an objection to the motions to seal since their filing.  Ms. Fortson has taken no position on any of the motions to seal.

Attached to this Order is a chart containing the Court's rulings on the various aspects of the motion to seal, consistent with the discussion herein.

## III.    Law

The public has a right of access to judicial records.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents.").  In reviewing motions to seal, the Court must determine the source of the public right of access, if any, that applies to each document at issue and then "weigh the competing interests at stake." *Va. Dep't of State Police*, 386 F.3d at 576 (cleaned up).  The First Amendment right of access extends only to particular judicial records whereas the common law right of access extends to all judicial records.  *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014).  As a result, some court-filed documents "fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment.  Still others may not qualify as 'judicial records' at all." *United States v. Moussaoui*, 65 Fed. App'x 881, 889 (4th Cir. 2003) (citing *United States v. Amodeo*, 44 F.3d 141, 145–46 (2d Cir. 1995)).

Documents filed with the court are judicial records—to which either the First Amendment or common law right of access attaches—if they "play a role in the adjudicative process, or adjudicate substantive rights." *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013).  If the court does not

4

consider or rely on filed documents to decide a motion, the documents are not judicial records and no right of access applies. *See Trapp v. Suntrust Bank*, No. 15-CV-937, 2016 WL 6833986, at \*1 (M.D.N.C. Nov. 18, 2016); *EEOC v. Loflin Fabrication LLC*, No. 18-CV-813, 2020 WL 3845020, at \*3 (M.D.N.C. July 8, 2020).

The First Amendment right of access attaches to materials considered in connection with a summary judgment motion. *See Pub. Citizen*, 749 F.3d at 267; *Qayumi v. Duke Univ.*, No. 16-CV-1038, 2018 WL 2025664, at \*1 (M.D.N.C. May 1, 2018). When the First Amendment right of access attaches, any denial of public access must be necessitated by a compelling interest[1] and must be narrowly tailored to serve that interest. *See Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).

In the appropriate case, an interest in confidential and proprietary business information can override the public's First Amendment right of access to court records. *See, e.g.*, *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 07-CV-275, 2011 WL 901958, at \*2 (E.D.N.C. Mar. 15, 2011) (collecting cases). The court may seal "sources of business

---

[1] While some of the case law discusses this in terms of a compelling governmental interest, courts agree that private interests may also be compelling. *See In re Iowa Freedom of Info. Council*, 724 F.2d 658, 664 (8th Cir. 1983) (rejecting the argument that only governmental interests can override the First Amendment right of access); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984) (explaining a private overriding interest "can involve the content of the information at issue, the relationship of the parties, or the nature of the controversy"); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580 (E.D. Va. 2009) (recognizing some private interests could override a First Amendment presumption of public access); *Haas v. Golding Transp., Inc.*, No. 09-CV-1016, 2010 WL 1257990, at \*7 n. 4 (M.D.N.C. Mar. 26, 2010) (substituting "higher value" for "governmental interest" in the context of a civil case involving nongovernmental litigants); *U.S. Tobacco Co-op. Inc. v. Big S. Wholesale of Va., LLC*, No. 13-CV-00527, 2014 WL 5361408, at \*1 (E.D.N.C. Oct. 21, 2014); *P & L Dev. LLC v. Bionpharma Inc.*, No. 17-CV-1154, 2019 WL 2079830, at \*2 (M.D.N.C. May 10, 2019) (reviewing types of private interests that may overcome the First Amendment right of access).

information that might harm a litigant's competitive standing," *Nixon*, 435 U.S. at 598, including "confidential and proprietary commercial information [such as] highly sensitive financial and business information," *Silicon Knights, Inc.*, 2011 WL 901958, at *2, if the litigant's interests "heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253.

In order to determine whether motions to seal based on claims of confidential business information should be granted, a court first decides whether the party has shown that the information sought to be sealed is confidential; if it is, the court evaluates whether disclosure would harm the party's competitive standing or otherwise harm its business interests; whether the motion is narrowly tailored; and whether the interests in non-disclosure are compelling and heavily outweigh the public's interest in access to the information. *See Syngenta Crop Prot., LLC v. Willowood, LLC*, No. 15-CV-274, 2017 WL 6001818, at *3 (M.D.N.C. Dec. 4, 2017). In weighing these competing interests, the court considers, among other things, whether the public needs access to the evidence or briefing to understand the judicial decision on summary judgment and the degree of harm that disclosure would likely cause. *Id.*; *Huntley v. Crisco*, No. 18-CV-744, 2020 WL 9815384, at *2 (M.D.N.C. Sept. 25, 2020). The same sealing standards apply to the confidential information of non-parties. *See, e.g.*, *Guessford v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 12-CV-260, 2014 WL 12594127, at *5–6 (M.D.N.C. Sept. 30, 2014).

## IV.    CCC's Motions to Seal: Docs. 119, 131

Non-party CCC seeks to seal certain exhibits and discussion in briefing about those exhibits. *See* Docs. 119, 131. CCC primarily asserts that these exhibits and

6

briefing disclose confidential and proprietary business information, including, *inter alia*, non-public information about its methodology for valuing loss vehicles, internal company materials, and macro-analyses of CCC's data from non-public market valuation reports, and that disclosure would harm its business. Doc. 120 at 3. CCC identifies one exhibit that contains personally identifying information that potentially affects privacy interests. Doc. 120-1 at 2.

### A. Summary Judgment Briefing and Exhibits

All materials considered in resolving the summary judgment motion are judicial records to which the First Amendment right of access attaches.[2] *See Pub. Citizen*, 749 F.3d at 267. Because the First Amendment is implicated, CCC must show a compelling interest in sealing and the sealing must be narrowly tailored to serve that interest. *See Va. Dep't of State Police*, 386 F.3d at 575. As the party seeking to seal documents, CCC must provide specific reasons disclosure would harm its competitive standing or otherwise harm its business interests. *See Pub. Citizen*, 749 F.3d at 270; *Syngenta Crop Prot., LLC*, 2017 WL 6001818, at *3.

### 1. Ms. Fortson's Name and Address

CCC seeks to redact Ms. Fortson's name and address from the publicly-available version of the CCC Market Valuation Report that Garrison gave Ms. Fortson. Doc. 103

---

[2] While the parties labeled certain exhibits as class certification exhibits or summary judgment exhibits, *see* Doc. 94 at 2–9, they in fact referenced several class certification exhibits in the summary judgment briefing. This section addresses the summary judgment briefing and all exhibits considered in connection with resolving that motion, regardless of labeling.

Case 1:19-cv-00294-CCE-JLW   Document 208   Filed 03/18/22   Page 7 of 30

at 31–48; Doc. 108 at 87; Doc. 109 at 1–17. The Court will grant CCC's motion to seal Ms. Fortson's address. Doc. 103 at 31; Doc. 108 at 87. The public does not need to know her address to understand the issues or the basis for any judicial decision and her privacy interests support sealing her address.

But CCC has not explained why Ms. Fortson's name should be redacted, *see* Doc. 120-2 at ¶ 8, and Ms. Fortson has not suggested her name should be redacted. She referenced the valuation report throughout her complaint, Doc. 14 at ¶¶ 29–42, the valuation report was a crucial part of the summary judgment decision, Doc. 194 at 6, 8–9, 19, and as the plaintiff, her name is not secret. CCC's motion to seal Ms. Fortson's name in the valuation report will be denied.

## 2. Waiver

Although given the opportunity, Doc. 196, CCC did not request any redactions to the Court's order granting partial summary judgment to Garrison on Ms. Fortson's Chapter 75 claims. Doc. 200. The order, Doc. 194, is now available to the public in its totality and contains some information that CCC initially claimed as confidential in its motion to seal. Docs. 119, 120. As to that information, CCC has waived its interest in confidentiality so sealing or redaction is unnecessary. CCC's motion to seal will be denied as to requested redactions containing this information.[3]

---

[3] Specifically, CCC has waived its claims of confidentiality in information in the parties' summary judgment briefing, *see* Doc. 93-1 at 9, Doc. 93-2 at 11, Doc. 93-3 at 11, Doc. 93-4 at 1, 3 (redacted publicly-available version at Doc. 92-1 at 9, Doc. 92-2 at 11, Doc. 92-3 at 11, Doc. 93-4 at 1, 3); and in these parts of the following documents:

As a result of this waiver and a withdrawn motion to seal by Garrison, all of the summary judgment briefs will be available in full to the public without redaction.[4]

### 3. CCC's Business Information—Redactions

CCC seeks to redact from the publicly-available exhibits non-public information and testimony about its methodology and inspections when valuing loss vehicles, internal company materials, and macro-analyses of the results of CCC's valuations. This is the kind of confidential and proprietary non-public business information that could harm a party's competitive standing if disclosed, *see, e.g.*, *Nixon*, 435 U.S. at 598, and CCC has submitted undisputed evidence of specific harm that would result from disclosure.

CCC sells its valuation services to Garrison and other insurers. *See, e.g.*, Doc. 103 at 71. It produces reports on the value of loss vehicles, *see* Doc. 94 at 11–28, based on a large database it has created and maintains, Doc. 103 at 57–58, 60–61, and proprietary methodology underlies its database and reports. A CCC vice-president, John Gintvainis, testifies that CCC "derives independent economic value" from keeping information about its valuation methodology and internal company materials from the general public, particularly its competitors. Doc. 120-2 at ¶ 29. This makes sense; CCC's business is

---

Mr. Berglund's declaration, Doc. 103 at 247–48 ¶¶ 2–3, 253 ¶ 9 (redacted publicly-available version at Doc. 94 at 166–67, 172);
Mr. Goebel's declaration, Doc. 104 at 7 ¶ 28 (redacted publicly-available version at Doc. 96 at 22);
Mr. Berglund's deposition, Doc. 104 at 65–67 (testimony at 215:25–216:24, 217:10–20) (redacted publicly-available version at Doc. 96 at 402–04); and
Mr. Goodwin's report, Doc. 108 at 24 ¶¶ 47–48, 24 n.55, 29 ¶ 63, 32 ¶ 73 (redacted publicly-available version at Doc. 97 at 40–41, Doc. 98 at 2, 5).

[4] Garrison has withdrawn its request to seal other information in the summary judgment briefing, which the Court discusses *infra*.

Case 1:19-cv-00294-CCE-JLW   Document 208   Filed 03/18/22   Page 9 of 30

selling its valuation services. Disclosure of internal details about CCC's valuation methodology, macro-analyses of the results of its methodology, and specific details relating to CCC's condition adjustment guidelines and vehicle inspections would likely cause economic harm to CCC by reducing the value of its product. Its competitors would have a better understanding of how CCC does business and would have access to some of CCC's methodology, allowing them to unfairly compete. As to this information, CCC has a compelling interest in confidentiality. *See Silicon Knights, Inc.*, 2011 WL 901958 at *2.

CCC's requested sealing must also be narrowly tailored to serve its interest in protecting confidential business information, and the court must consider less drastic alternatives to sealing. *See Va. Dep't of State Police*, 386 F.3d at 575–76. As to these exhibits, CCC has not asked to seal broad swaths of non-confidential information; rather, it has proposed targeted redactions that are not overbroad and only concern confidential information. Redaction is also the least drastic alternative to sealing, as it will protect CCC's business and proprietary interests while maintaining a significant degree of transparency in the proceedings.

CCC's compelling interest must heavily outweigh the public's First Amendment right of access to justify sealing, taking into account both the public's need to access the evidence to understand the Court's decision on summary judgment and the degree of harm that disclosure would likely cause. *See Syngenta Crop Prot., LLC*, 2017 WL 6001818, at *3. Here, there is substantial evidence available on the public docket that explains CCC's valuation system in general terms. *See, e.g.*, Doc. 94 at 11–28; 113–35;

10

Doc. 95 at 121–24; Doc. 96 at 362–415. As noted *supra*, the summary judgment briefing will all be available on the public docket with no redactions. The Court's summary judgment decisions are publicly available in full. *See* Docs. 194, 202.

Taken together, the publicly-available evidence, briefing, and judicial opinions are adequate for the public to understand and evaluate the basis for the summary judgment decisions; access to the precise specifics of CCC's confidential information is not necessary. Given the significant harm to CCC that is likely to result from public disclosure of its detailed proprietary business information and its narrowly tailored redactions, the Court finds that CCC's interests outweigh the public's interest in more thorough disclosure. CCC's motion to seal will be granted as to these documents.[5]

---

[5] Specifically, the motion to seal is granted as to:

> Mr. Lopez's deposition, Doc. 103 at 15–18, 22, 26–28 (testimony at 104:16–21, 106:5–107:6, 108:13–110:6, 110:13–17, 111:6–19, 112:2–113:25, 118:7–119:15, 147:21–25, 169:25–170:4, and 183:25–184:2) (publicly-available version containing a slip sheet at Doc. 94 at 10);
> Mr. Hausman-Cohen's declaration, Doc. 103 at 171–74 ¶¶ 22–24, ¶¶ 27–34 (redacted version publicly available at Doc. 94 at 90–93);
> Mr. McCathren's declaration, Doc. 103 at 181–92 (redacted version publicly available at Doc. 94 at 100–11);
> Mr. Schwickerath's declaration, Doc. 103 at 209–10, 212 (redacted version publicly available at Doc. 94 at 128–29, 131);
> Mr. Berglund's declaration, Doc. 103 at 248–49 ¶¶ 5–6 (redacted version publicly available at Doc. 94 at 167–68);
> Mr. Berglund's deposition, Doc. 103 at 272 (testimony at 158:20–159:25), 274–75 (testimony at 181:15–182:18, 183:12–25, 184:8–185:6) (redacted version publicly available at Doc. 95 at 110, 112–13);
> Mr. McCathren's deposition, Doc. 103 at 283–84 (testimony at 198:1–7, 204:9–14) (redacted version publicly available at Doc. 95 at 121–22);
> Mr. Berglund's deposition, Doc. 104 at 73 (testimony at 260:9–19) (redacted publicly-available version at Doc. 96 at 410); and
> Mr. Goebel's declaration, Doc. 108 at 51 n.4–5, 62 ¶ 47, 83–86 (redacted version publicly available at Doc. 98 at 24, 35, 56–59).

11

### 4. CCC's Business Information—Entire Exhibits

CCC also asks to seal certain entire exhibits. These exhibits contain CCC's condition matrices for vehicle inspections, third-party studies CCC commissioned to analyze the validity of its condition adjustment descriptors when determining the fair market value of used vehicles, deposition testimony from CCC's senior director of operations for valuation services, and internal slideshow presentations designed for CCC staff.

### a. CCC's Condition Matrices

CCC seeks to seal the condition matrices it uses for vehicle inspections. All of the information in these exhibits is confidential business information about "CCC's methods for evaluating the condition of the key components of a loss vehicle." Doc. 120-2 at ¶¶ 10, 12. CCC has offered undisputed testimony that disclosure of the non-public matrices would cause economic harm and provide its competitors an unfair advantage, *id.* at ¶ 29, and the Court finds that harm outweighs the public's need to access the matrices.

The general evidence, the briefing, and judicial opinions available on the docket are sufficient for the public to understand the basis of the Court's summary judgment decisions. And certain portions of deposition testimony filed under seal that discuss the matrices, *see* Doc. 103 at 19, 60–61, will be made publicly available as a result of this Order. *See infra* at 15, 20–21. With this testimony available, sealing CCC's condition matrices is narrowly tailored to protect CCC's interest in confidentiality. Redaction is not possible, and there are no other alternatives to sealing these documents. CCC's motion to seal the condition matrices, Doc. 103 at 108–11, 145–48, will be granted.

### b. CCC's Commissioned Third-Party Studies

CCC also seeks to seal the contents of two third-party studies it commissioned. One, the Maritz study, evaluated the condition adjustments CCC used in determining fair market value of used vehicles. Doc. 104 at 79–120, Doc. 105 at 1–20; *see* Doc. 96 at 460 (publicly-available version containing only a slip sheet for the exhibit). The other, the Murphy/Landy study, evaluated CCC's vehicle condition characteristics and the factors contributing to vehicle values. Doc. 105 at 21–44; Doc. 106 at 1–25; Doc. 107 at 1–21; Doc. 108 at 1–2; *see* Doc. 96 at 461 (publicly-available version containing only a slip sheet for the exhibit). Both studies contain non-public CCC data and survey information.

Sealing of such information is appropriate. The internal results of these market studies are confidential and CCC has articulated economic harm that would stem from their disclosure. Doc. 120-2 at ¶ 29. The public does not need to access the specific confidential information in the studies to understand the Court's summary judgment decision. The Court summarizes the studies in its public order and explains its reasoning based on that general summary. Doc. 194 at 12.

But a less drastic alternative to sealing the studies in their entirety is available. *See Va. Dep't of State Police*, 386 F.3d at 576. Sealing the studies would result in the public only having access to slip sheets that reveal no information about either study, not even their titles. *See* Doc. 96 at 460–61 (publicly-available versions containing only a slip sheet for the studies). And not all of the information in either study is confidential; some is information about the qualifications and experience of the entities that conducted the studies, for example. As to the non-confidential information within the studies, CCC's

13

motion to seal is denied. *See* Doc. 104 at 79–82, 97; Doc. 105 at 19–20 (non-confidential information from the Maritz study); Doc. 105 at 21–29 (non-confidential information from the Murphy/Landy study).

In sum, while the studies are predominately comprised of confidential information for CCC's internal business use that would harm CCC if disclosed, they also contain non-confidential information that should be made public. CCC's motion to seal the Maritz study and the Murphy/Landy study is granted in part, as specified in the attached chart.

### c. The Gintvainis Deposition

CCC seeks to seal the exhibit containing excerpts of deposition testimony from John Gintvainis, CCC's senior director of operations for valuation services. Doc. 103 at 49–107; *see* Doc. 94 at 29 (publicly-available version containing only a slip sheet for the exhibit). CCC contends all of the deposition excerpt is confidential, asserting that the transcript includes sensitive business information throughout so that sealing the transcript in its entirety is justified. Doc. 120-2 at ¶ 9.

CCC's motion to seal the entire exhibit will be denied. CCC has not shown that all of the information in the deposition is confidential, and the motion is overbroad. A number of the pages contain non-confidential information such as the witness's work history, job responsibilities, and education; the witness's preparation for testifying; and general information about CCC's valuation service and inspection standards and about Ms. Fortson's non-confidential valuation report. *See, e.g.*, Doc. 103 at 49–56, 60. There is no good reason to seal this information.

14

But as to those pages and lines containing information obviously confidential and the disclosure of which would be harmful, the motion to seal will be granted. For example, Mr. Gintvainis testifies about the methods CCC uses to populate its comparable vehicle database, how it collects additional information about vehicles in its database, *id.* at 57–59, and the proprietary process through which CCC creates valuation reports and makes adjustments to individual loss vehicles. *Id.* at 73. This is the same kind of information the Court has already discussed *supra*, and for the same reasons these pages shall remain under seal.[6] CCC's motion will be granted in part. Specific instructions as to which portions of the deposition transcript to make available to the public and which portions to maintain under seal are included in the sealing chart attached to this Order.

### d. Internal Presentations for CCC Staff

CCC seeks to seal two exhibits containing slides used for internal presentations to CCC staff. *Id.* at 287–305; Doc. 104 at 1–2 (publicly-available versions containing only a slip sheet for the presentations at Doc. 96 at 16–17). The slides contain non-public information about CCC's proprietary methodology, confidential analyses of competitors,

---

[6] CCC only specifically identified four pages of the deposition excerpts as containing confidential information. Doc. 120-2 at ¶ 9. The Court could deny the motion to seal the remaining pages, as the Local Rules and its Standard Order require the entity requesting sealing to be specific. L.R. 5.4; Doc. 7 at ¶ 7. But identifying the large portions of deposition testimony containing the confidential information at issue was fairly straightforward, and the Court has done so. To the extent the Court did not identify all the information CCC seeks to seal, CCC should have specifically identified all confidential information within the transcript and the motion is denied as waived.

The Court also will not require CCC to make public the extended non-confidential discussions between counsel in the midst of testimony about confidential matters or snippets of non-confidential information; those lines within the deposition are of no value in understanding the court's decisions and to do so would unnecessarily complicate and confuse the record.

and overviews of CCC's marketing and sales strategies. Doc. 120-2 at ¶¶ 20–21. CCC has shown that these documents are confidential and that disclosure would harm its competitive standing and business interests. *Id.* at ¶ 29. The exhibits were of marginal relevance to the Court's summary judgment decisions and neither exhibit was cited in those orders. CCC's interest in confidentiality outweighs the public interest in accessing these materials. CCC's motion to seal these documents will be granted.

### B. *Class Certification Briefing and Exhibits*

CCC seeks to seal exhibits and references to exhibits filed in connection with Ms. Fortson's motion for class certification. Ms. Fortson's class certification motion was decided on mootness grounds, not on the merits. *See* Doc. 202. In deciding the motion for class certification, the Court did not consider any of the class certification exhibits at issue in the motion to seal or any of the references in the class certification briefing to those exhibits.

As far as the class certification motion is concerned, the redacted parts of these exhibits and briefing did not "play a role in the adjudicative process or adjudicate substantive rights." *In re Section 2703(D)*, 707 F.3d at 290. Thus, they are not judicial records and no right of public access attaches. The discussion in the briefs of these exhibits should remain sealed, and the exhibits or parts of exhibits relevant only to the merits of the class certification decision should also remain sealed. *See EEOC*, 2020 WL 3845020, at *3; *Trapp*, 2016 WL 6833986, at *1. Even if they are judicial records, unsealing the documents "would have little value in furthering the public oversight of the

16

judicial process." *Qayumi*, 2018 WL 2025664, at *3 (cleaned up). CCC's motion to seal these exhibits will be granted.[7]

As noted *supra*, the parties labeled some exhibits as submitted in connection with the class certification motion but referred to them in their summary judgment briefing. Those exhibits are judicial records and were evaluated earlier in this Order.

## V.    Garrison's Motion to Seal:  Doc. 115

Garrison also seeks to maintain under seal certain exhibits as confidential and proprietary.

### A.  Doc. 103 at 150–55, Doc. 103 at 156–58

These documents contain instructional and training materials for Garrison's claim adjusters, Doc. 103 at 150–55, and a report with feedback from USAA members, including those insured by Garrison, about total loss claim settlements. *Id.* at 156–58. Ms. Fortson filed the exhibits in support of her motion for class certification. Doc. 94 at 3. The parties did not rely on them in connection with their summary judgment arguments, *see* Doc. 93-1, 93-2, 93-3, 93-4, and they were not relevant to or considered as part of the Court's summary judgment decision. The Court denied Ms. Fortson's class

---

[7] Specifically, the motion to seal is granted as to redactions in the parties' class certification briefing, Doc. 126-1 at 10–11, 14–15, 17–19, 21–22, 24, 33, 37, Doc. 126-2 at 16–17, Doc. 126-3 at 6 (redacted versions publicly available at Doc. 125-1 at 10–11, 14–15, 17–19, 21–22, 24, 33, 37, Doc. 125-2 at 16–17, Doc. 125-3 at 6); and the following documents:
>   The entirety of CCC's Field Inventory Representative Training Manual, Doc. 103 at 112–44 (publicly-available version containing a slip sheet at Doc. 94 at 31)
>   Ms. Gibson's declaration, Doc. 103 at 266–69 (redacted version publicly available at Doc. 94 at 187–90); and
>   Mr. Walker's declaration, Doc. 113 at 19–25 (¶¶ 15, 18, 20–21, 23–25, 27, 29), 31–41 (¶¶ 42, 44–47, 50–53, 55, 57, 60, 62, 68, 70), 80–110, 112–21 (redacted version publicly available at Doc. 102 at 36–42, 48–58, 97–127, 129–38).

certification motion as moot, not on the merits, and these materials were not relevant to or considered as part of the Court's class certification decision.  *See* Doc. 202 and discussion *supra* at 16-17.

Because these exhibits did not "play a role in the adjudicative process, or adjudicate substantive rights," they are not judicial records.  *In re Section 2703(D)*, 707 F.3d at 290.  No right of public access thus attaches, and in any event the public need not access these exhibits in order to understand the Court's disposition of this motion.  *See EEOC*, 2020 WL 3845020, at *3.  These exhibits should remain sealed.

### B.  The Lopez Deposition

This exhibit, Doc. 103 at 10–30, contains deposition testimony from Garrison's corporate representative, Mr. Lopez.  Garrison seeks to seal the exhibit in its entirety.

Both parties cited to Mr. Lopez's testimony in their summary judgment briefing and his testimony was relevant to the Court's summary judgment decision.  *See* Doc. 194 at 2–3, 8–11, 24–25.  This exhibit is a judicial record to which the First Amendment right of access attaches.  *See, e.g.*, *Pub. Citizen*, 749 F.3d at 267.

As noted *supra*, because the First Amendment right is implicated, Garrison must show a compelling interest in sealing and the sealing must be narrowly tailored to serve that interest.  *See Va. Dep't of State Police*, 386 F.3d at 575.  Garrison must provide specific reasons disclosure would harm its competitive standing or otherwise harm its business interests.  *See Syngenta Crop Prot., LLC*, 2017 WL 6001818, at *3; *Pub. Citizen*, 749 F.3d at 270.

Case 1:19-cv-00294-CCE-JLW   Document 208   Filed 03/18/22   Page 18 of 30

To the extent that Garrison's motion is directed to the same confidential and proprietary information belonging to CCC that the court has found to be appropriate for sealing, the motion will be granted for the same reasons. The deposition transcript contains confidential information drawn from CCC documents about CCC's condition matrices, Doc. 103 at 15–18, vehicle inspections practices, *id.* at 22, and database. *Id.* at 26–28.

Beyond this, however, the motion will be denied because Garrison has not shown that all of the information in the deposition is confidential, its evidence of harm is conclusory, and the request is overbroad. For example, some of Mr. Lopez's testimony is about information Garrison provides to its insureds, such as the valuation report sent to those who submit a total loss claim. *Id.* at 19–21. This is not confidential information. Also, part of Garrison's justification for sealing all of Mr. Lopez's testimony is CCC's interest in confidentiality. Doc. 116 at 9. But CCC has proposed a set of redactions narrower than the testimony Garrison asserts discloses CCC's confidential information. *See id.*; Doc. 120–2 at ¶ 7.

Even for the information that is confidential, Garrison has not offered specific reasons that disclosure of Mr. Lopez's testimony would harm its business interests. The only evidence Garrison offers to support the need for confidentiality is a conclusory statement from Mr. Nelson that disclosure "could provide an unfair advantage to competitors." Doc. 116-1 at ¶ 13; *see also* Doc. 116 at 9. This speculative and vague contention of harm is not sufficient to meet Garrison's burden to show a compelling interest in sealing. *See, e.g.*, *Pub. Citizen*, 749 F.3d at 269–70. Nor is it enough to

overcome the public's significant interest in accessing the deposition testimony; the Court cited Mr. Lopez's testimony throughout its summary judgment decision. *See* Doc. 194 at 2–3, 8–11, 24–25; *see also Huntley*, 2020 WL 9815384, at *4.

The public's First Amendment right of access does not yield when a business labels information confidential but does not provide any detail about the harm it would suffer if the information became public. *See Pub. Citizen*, 749 F.3d at 269–70. This is especially so when the evidence is important to a dispositive motion.

Garrison has not met its burden to show a compelling interest that outweighs the public's First Amendment right of access to this testimony. Garrison's motion to seal Mr. Lopez's deposition transcript will be denied except for the narrow redactions requested by CCC discussed *supra*.

### C. **Withdrawn Exhibits and Related Reference**

Garrison has withdrawn its motion to seal three exhibits, Doc. 103 at 149 (publicly-available version containing a slip sheet at Doc. 94 at 75); *id.* at 159–63 (publicly-available version containing a slip sheet at Doc. 94 at 76); *id.* at 164–65 (publicly-available version containing a slip sheet at Doc. 94 at 77), and a reference to one of the documents in its summary judgment briefing, Doc. 93-1 at 29 (redacted pages publicly available at Doc. 92-1 at 29). Each of these exhibits were initially filed as part of the sealed joint appendix. Garrison and CCC shall file these exhibits in the supplemental version of the joint appendix that reflects this Order.

Case 1:19-cv-00294-CCE-JLW   Document 208   Filed 03/18/22   Page 20 of 30

## VI. Making Sense of the Record and Instructions

Attached to this Order is a Chart that includes a brief description of the specific document subject to the motion to seal; the location on the electronic docket of the currently-sealed versions and the publicly available versions as initially filed, with specific CM-ECF docket and page designations and, where appropriate, line designations; and the Court's ruling.

Ordinarily when the Court denies a motion to seal, the Court directs the Clerk to unseal particular documents or exhibits. Here, that will be difficult because the documents to be unsealed are embedded within larger CM-ECF documents in the form of the Joint Appendix. Therefore, the Court will direct CCC and Garrison to file those documents in a supplemental Joint Appendix.

Specifically, CCC and Garrison shall cooperate in preparing a publicly-available supplement to the Joint Appendix that contains all documents, pages, and lines where the motion to seal is denied. CCC and Garrison shall file the supplemental Joint Appendix on the public docket no later than April 4, 2022.

No later than April 15, 2022, CCC and Garrison shall file on the public docket a chart that sets forth in one place the locations of the various documents subject to the motion to seal. The chart shall contain the headings 1) Description of Materials, 2) Sealed Location, 3) Initial Publicly Available Location, and 4) Final Publicly Available Location. The first three columns shall be identical to the chart attached to this Order, and the fourth column shall contain the same information from CM-ECF after the supplemental Joint Appendix is filed.

With this supplemental Joint Appendix publicly available, the public will be able to access all information they are entitled to see. The original sealed version of the Joint Appendix can remain under seal.

Failure to file the supplemental Joint Appendix and the sealing chart attached to this Order will result in unsealing the entire temporarily-sealed joint appendix currently on the docket at Docs. 103–13.

## VII.    Expiration of the Seal

The parties have not addressed how long the seal should be maintained. In the Court's experience, this kind of business information becomes stale fairly quickly and any harm from its disclosure will no longer exist within a few years; much of the information is already dated. Given changes in technology, regulatory requirements, and other likely developments, it is hard to imagine the sealed information will have much value after five years. Absent a motion to continue the seal filed no later than May 1, 2027, and supported by very detailed evidence, the Clerk shall unseal all sealed materials on June 1, 2027.

## VIII.   Conclusion

To the extent CCC and Garrison have made overbroad sealing requests, seek to seal nonconfidential materials, have waived an interest in confidentiality, have not shown specific harm from disclosure, or seek to seal materials where the public's First Amendment right of access outweighs their private interests, the motions will be denied. To the extent the summary judgment exhibits at issue are confidential and disclosure

22

would harm CCC's interests or the summary judgment and class certification materials were not crucial to the Court's summary judgment decision, the motions will be granted.

It is **ORDERED** that:

1. The defendant's motion to seal, Doc. 115, is **GRANTED in part**, and non-party CCC Intelligent Solution Inc.'s motion to seal, Doc. 119, is **GRANTED in part**, and supplemental motion to seal, Doc. 131, is **GRANTED**, and otherwise is **DENIED,** as stated herein and in the attached chart.

2. No later than April 4, 2022, CCC and Garrison shall file a supplement to the Joint Appendix removing the redactions and including those pages as to which the motion to seal is denied, as stated herein and in the attached chart.

3. No later than April 15, 2022, CCC and Garrison shall file on the public docket a chart that sets forth in one place the locations of the various documents subject to the motion to seal, following the directions set forth in this order.

4. The Clerk shall maintain under seal the entire version of the joint appendix that was initially filed under seal, Doc. 103–13, until June 1, 2027, absent a motion to extend the seal filed no later than May 1, 2027.

This the 18th day of March, 2022.

UNITED STATES DISTRICT JUDGE

23

**Fortson v. Garrison Property & Casualty Insurance Company (19-CV-294) Sealing Chart**

| Description of Materials | Sealed Location | Initial Publicly Available Location | Decision on Sealing |
|---|---|---|---|
| Garrison's Brief in Support of Summary Judgment | Doc. 93-1 at 9 | Doc. 92-1 at 9 | Denied per Order at p. 8. |
| Ms. Fortson's Brief in Opposition to Garrison's Motion for Summary Judgment | Doc. 93-2 at 11 | Doc. 92-2 at 11 | Denied per Order at p. 8. |
| Garrison's Reply Brief in Support of Summary Judgment | Doc. 93-3 at 11 | Doc. 92-3 at 11 | Denied per Order at p. 8. |
| Ms. Fortson's Surreply Brief in Opposition to Garrison's Motion for Summary Judgment | Doc. 93-4 at 1, 3 | Doc. 92-4 at 1, 3 | Denied per Order at p. 8. |
| Deposition of Robert Lopez (PJA Tab 1) | Doc. 103 at 10–30 | Doc. 94 at 10 | Granted as to Doc. 103 at 15–18, 22, 26–28 (testimony at 104:16–21, 106:5–107:6, 108:13–110:6, 110:13–17, 111:6–19, 112:2–113:25, 118:7–119:15, 147:21–25, 169:25–170:4, and 183:25–184:2) per Order at p. 9–11, Otherwise denied as to Doc. 103 at 10–30 (testimony at 30:2–104:15, 104:22–106:4, 107:7–108:12, 110:7–12, 110:18–111:5, 111:20–112:1, 118:1–6, 119:16–147:20, |

1

| Description of Materials | Sealed Location | Initial Publicly Available Location | Decision on Sealing |
|---|---|---|---|
| | | | 148:1–169:24, 170:5–183:24, 184:3–212:22) per Order at p. 18–20. |
| Ms. Fortson's Valuation Report (PJA Tab 2, DJA Tab 63) | Doc. 103 at 31–48; Doc. 108 at 87 | Doc. 94 at 11–28; Doc. 108 at 87; Doc. 109 at 1–17 | Granted as to Ms. Fortson's address, Doc. 103 at 31; Doc. 108 at 87, Otherwise denied as to Ms. Fortson's name, Doc. 103 at 31–48; Doc. 108 at 87; Doc. 109 at 1–17 per Order at p. 7–8. |
| Deposition of John Gintvainis (PJA Tab 3) | Doc. 103 at 49–107 | Doc. 94 at 29 | Granted as to Doc. 103 at 57–59 (testimony at 33:5–35:8, 38:14–22), 60–62 (testimony at 43:11–44:12, 45:21–51:14), 64–65 (testimony at 59:17–64:9), 67–106 (testimony at 71:13–72:3, 72:12–74:16, 77:6–79:12, 79:23–80:15, 81:2–86:20, 90:1–95:11, 96:10–96:14, 97:22–158:22, 162:8–207:21, 210:24–226:12, 229:6–232:25), Otherwise denied as to Doc. 49–60 (testimony at 1:1–33:4, 35:9–38:13, 38:23–43:10, 44:13–45:20), 62–69 (testimony at 51:15–59:16, 64:10–71:12, 72:4–72:12, |

| Description of Materials | Sealed Location | Initial Publicly Available Location | Decision on Sealing |
|---|---|---|---|
| | | | 74:17–77:5, 79:13–79:22, 80:16–80:25) 71 (testimony at 86:21–89:25), 73 (testimony at 95:12–96:9, 96:15–97:21), 89–90 (testimony at 158:23–162:7), 101–102 (testimony at 207:22–210:23), 106 (testimony at 226:13–229:5) per Order at p. 14–15. |
| CCC Inspection Guidelines – Vehicle Condition (PJA Tab 4) | Doc. 103 at 108–11 | Doc. 94 at 30 | Granted per Order at p. 12. |
| CCC Field Inventory Representative Training Manual (PJA Tab 5) | Doc. 103 at 112–44 | Doc. 94 at 31 | Granted per Order at p. 16–17. |
| CCC Inspection Guidelines – Vehicle Condition (PJA Tab 6) | Doc. 103 at 145–48 | Doc. 94 at 32 | Granted per Order at p. 12. |
| Instruction and Training Materials for Garrison Claims Adjusters (PJA Tab 10) | Doc. 103 at 150–55 | Doc. 94 at 76 | Granted per Order at p. 17–18. |
| Report with Feedback from USAA Members (PJA Tab 11) | Doc. 103 at 156–58 | Doc. 94 at 77 | Granted per Order at p. 17–18. |

| Description of Materials | Sealed Location | Initial Publicly Available Location | Decision on Sealing |
|---|---|---|---|
| Declaration of Larry Hausman-Cohen (PJA Tab 16) | Doc. 103 at 171–74 ¶¶ 22–24, ¶¶ 27–34 | Doc. 94 at 90–93 | Granted per Order at p. 9–11. |
| Declaration of Randall McCathren (PJA Tab 17) | Doc. 103 at 181–92 | Doc. 94 at 100–11 | Granted per Order at p. 9–11. |
| Declaration of David Schwickerath (PJA Tab 18) | Doc. 103 at 209–10, 212 | Doc. 94 at 128–29, 131 | Granted per Order at p. 9–11. |
| Declaration of William Berglund (PJA Tab 19) | Doc. 103 at 247–49, 253 | Doc. 94 at 166–68, 172 | Granted as to Doc. 103 at 248–49 ¶¶ 5–6 per Order at p. 9–11, Otherwise denied as to Doc. 103 at 247–48 ¶¶ 2–3, 253 ¶ 9 per Order at p. 8. |
| Declaration of Elizabeth Gibson (PJA Tab 21) | Doc. 103 at 266–69 | Doc. 94 at 187–90 | Granted per Order at p. 16–17. |
| Deposition of William Berglund (PJA Tab 27) | Doc. 103 at 272 (testimony at 158:20–159:25), 274–75 (testimony at 181:15–182:18, 183:12–25, 184:8–185:6) | Doc. 95 at 110, 112–13 | Granted per Order at p. 9–11. |
| Deposition of Randall McCathren (PJA Tab 28) | Doc. 103 at 283–84 (testimony at 198:1–7, 204:9–14) | Doc. 95 at 121–22 | Granted per Order at p. 9–11. |

| Description of Materials | Sealed Location | Initial Publicly Available Location | Decision on Sealing |
|---|---|---|---|
| March 19, 2014, CCC Internal PowerPoint Presentation (DJA Tab 14) | Doc. 103 at 287–97 | Doc. 96 at 16 | Granted per Order at p. 15–16. |
| January 18, 2013, CCC Internal PowerPoint Presentation (DJA Tab 15) | Doc. 103 at 298–305, Doc. 104 at 1–2 | Doc. 96 at 17 | Granted per Order at p. 15–16. |
| Declaration of Gregory Goebel (DJA Tab 16) | Doc. 104 at 7 ¶ 28 | Doc. 96 at 22 | Denied per Order at p. 8. |
| Deposition of William Berglund (DJA Tab 48) | Doc. 104 at 65–67 (testimony at 215:25–216:24, 217:10–20), 73 (testimony at 260:9–19) | Doc. 96 at 402–04, 410 | Denied as to Doc. 104 at 65–67 (testimony at 215:25–216:24, 217:10–20) per Order at p. 8–9, Otherwise granted as to Doc. 104 at 73 (testimony at 260:9–19) per Order at p. 9–11. |
| The Maritz Study (DJA Tab 51) | Doc. 104 at 79–120, Doc. 105 at 1–20 | Doc. 96 at 460 | Denied as to Doc. 104 at 79–81 (up to the end of the paragraph titled "Overview" at Doc. 104 at 81), 82, 97 (first paragraph), Doc. 105 at 19–20, Otherwise granted as to Doc. 104 at 81 (after the paragraph titled "Overview"), 83, 97–120 (beginning after the first paragraph at Doc. 104 at 97); Doc. 105 at 1–18 per Order at p. 13–14. |

| Description of Materials | Sealed Location | Initial Publicly Available Location | Decision on Sealing |
|---|---|---|---|
| | | | |
| The Murphy/Landy Study (DJA Tab 52) | Doc. 105 at 21–44, Doc. 106 at 1–25; Doc. 107 at 1–21; Doc. 108 at 1–2 | Doc. 96 at 461 | Denied as to Doc. 105 at 21–29 (except for the paragraph titled "CCC Background" at Doc. 105 at 25–26), Otherwise granted as to Doc. 105 at 25–26 (paragraph titled "CCC Background"), 30–44; Doc. 106 at 1–25; Doc. 107 at 1–21; Doc. 108 at 1–2 per Order at p. 13–14. |
| Expert Report of George Goodwin (DJA Tab 62) | Doc. 108 at 24 ¶¶ 47–48, 24 n.55, 29 ¶ 63, 32 ¶ 73 | Doc. 97 at 40–41, Doc. 98 at 2, 5 | Denied per Order at p. 8–9. |
| Declaration of Gregory Goebel (DJA Tab 63) | Doc. 108 at 51 n.4–5, 62 ¶ 47, 83–86 | Doc. 98 at 24, 35, 56–59 | Granted per Order at p. 9–11. |
| Declaration of Jonathan Walker (DJA Tab 65) | Doc. 113 at 19–25 (¶¶ 15, 18, 20–21, 23–25, 27, 29), 31–41 (¶¶ 42, 44–47, 50–53, 55, 57, 60, 62, 68, 70), 80–110, 112–21 | Doc. 102 at 36–42, 48–58, 97–127, 129–38 | Granted per Order at p. 16–17. |

| Description of Materials | Sealed Location | Initial Publicly Available Location | Decision on Sealing |
|---|---|---|---|
| Ms. Fortson's Brief in Support of Class Certification | Doc. 126-1 at 10–11, 14–15, 17–19, 21–22, 24, 33, 37 | Doc. 125-1 at 10–11, 14–15, 17–19, 21–22, 24, 33, 37 | Granted per Order at p. 16–17. |
| Garrison's Brief in Opposition to Ms. Fortson's Motion for Class Certification | Doc. 126-2 at 16–17 | Doc. 125-2 at 16–17 | Granted per Order at p. 16–17. |
| Ms. Fortson's Reply Brief in Support of Class Certification | Doc. 126-3 at 6 | Doc. 125-3 at 6 | Granted per Order at p. 16–17. |
| Documents and Materials Garrison No Longer Requests to be Filed Under Seal | Doc. 103 at 149 (PJA Tab 9), 159–163 (PJA Tab 12); 164–65 (PJA Tab 13); Doc. 93-1 at 29 | Doc. 94 at 75, 78–79; Doc. 92-1 at 29 | Motion to seal withdrawn. |

7